# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## DIVISION OF LAFAYETTE

| | |
|---|---|
| **DESMOND DEMARIO FRAZIER** | **CIVIL ACTION: 6:19-cv-00082** |
| **VERSUS** | **JUDGE DOUGHTY** |
| **CITY OF KAPLAN, LOUISI ANA, ET AL** | **MAGISTRATE JUDGE HANNA** |

## REPORT AND RECOMMENDATION

Pending before the Court is the Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted (Rec. Doc. 18), and the Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted Regarding Plaintiff's First Amended Complaint (Rec. Doc. 25) filed on behalf of Defendants, Officer Cary James Burton (individually), Officer Payton Lee Hardy (individually), and the City of Kaplan. Defendants seek dismissal of Plaintiff's claims on the grounds of prescription, and, further, dismissal of Plaintiff's Fifth and Fourteenth Amendment claims, claims for malicious prosecution, *Monell* claims, and state law claims. Plaintiff opposed the motion(s) (Rec. Doc. 27), and Defendants replied (Rec. Doc. 29).[1] The motions were referred to this Court for report and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court.  For the following reasons, it is recommended that Defendants' first Motion

---

[1]        Subsequent to Defendants' first Motion to Dismiss, Plaintiff filed a First Amended Complaint for damages on March 8, 2019. Defendants then filed the second Motion to Dismiss regarding the Amended Complaint. Plaintiff filed only one Opposition (Rec. Doc. 30), and Defendants filed one Reply (Rec. Doc. 31).

to Dismiss (Rec. Doc. 18) be DENIED AS MOOT, and that the second Motion to Dismiss (Rec. Doc. 25) be GRANTED IN PART to the extent it seeks dismissal of all federal law claims for false arrest/imprisonment with prejudice, and DENIED IN PART to the extent it seeks dismissal of Plaintiff's state law claims for malicious prosecution with prejudice. It is recommended that Plaintiff's state law claim for malicious prosecution be dismissed without prejudice.

## BACKGROUND

Plaintiff's original Complaint asserted claims pursuant to 42 U.S.C. §1983 and §1988 for alleged violations of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights following his arrest on August 29, 2016. Plaintiff alleged that on that date Kaplan Police Officer Burton pulled him over for an alleged traffic violation. Upon coming to a stop, Plaintiff alleged that his passenger, DeAndrus Mitchell, jumped out of the vehicle and shouted that Plaintiff had a gun and tried to pull it on him. Officer Burton then forced both Plaintiff and Mitchell at gunpoint to lie on the ground. Kaplan Officer Hardy arrived on the scene and handcuffed Plaintiff and Mitchell. Officer Burton then searched the vehicle and discovered a handgun and magazine in the grass approximately four feet from the passenger side of the vehicle. Officer Hardy transported both Mitchell and Plaintiff to the Kaplan Police Department. They were both later charged for various gun-related offenses. (Rec. Doc. 1, ¶22-25; Rec. Doc. 16, ¶22-25).

2

Following his arrest, Plaintiff was incarcerated in the Vermilion Parish Jail until January 26, 2017, when a state court judge conducted a preliminary examination and concluded that there had been no probable cause for Plaintiff's arrest. Nonetheless, the charges were not formally dismissed until nearly eighteen months later on June 11, 2018. (Rec. Doc. 1, ¶29-30; Rec. Doc. 16, ¶29-30).

Plaintiff filed his original Complaint on January 23, 2019, in which he asserted claims for false arrest and malicious prosecution and *Monell* claims, and sought "general and/or special and/or punitive damages." (Rec. Doc. 1, at 12). In the original Complaint, Plaintiff named Officer Burton and Officer Hardy "individually in [their] official capacity[ies] as [] sworn officer[s] of the Kaplan Police Department, acting under Color of Law…" (Rec. Doc. 1, ¶4(B) and (C)).

Defendants filed their first Motion to Dismiss on March 8, 2019. (Rec. Doc. 18). On that same date, Plaintiff filed a First Amended Complaint for Damages, wherein Plaintiff named Officer Burton and Officer Hardy "in [their] individual capacity[ies], for actions as [] sworn officer[s] of the Kaplan Police Department, acting under Color of Law…" (Rec. Doc. 16, ¶4(B) and (C)).[2] Plaintiff also added the transcript of the January 26, 2017 preliminary examination in state court as Exhibit D and adjusted the remaining exhibit designations accordingly. Otherwise,

---

[2]     Later, Plaintiff clarified that his claims against Officers Burton and Hardy are individual capacity claims only.

Plaintiff's factual allegations and causes of action remained the same. Defendants then filed a Motion to Dismiss regarding the First Amended Complaint, to which they attached as exhibit the police report. (Rec. Doc. 25). Given this procedural history, the Court recommends denying Defendants' first Motion to Dismiss (Rec. Doc. 18) as moot. Therefore, the Court will consider Defendants' Motion to Dismiss the Amended Complaint on the merits.

Defendants move to dismiss Plaintiff's claims on the grounds of prescription and on the grounds that Plaintiff failed to state claims under the Fifth and Fourteenth Amendments, *Monell* claims, and Louisiana state law claims. Plaintiff concedes that he has not stated a claim for *Monell* violations, and the Court will therefore not address same. (Rec. Doc. 30, at 15).  Defendants further seek to dismiss Plaintiff's claims for malicious prosecution as either unviable under federal law or barred by the doctrine of qualified immunity. (Rec. Doc. 25).

<u>**LAW AND ANALYSIS**</u>

I.    <u>**The Applicable Standard**</u>

When considering a motion to dismiss for failure to state a claim under F.R.C.P. Rule 12(b)(6), the district court must limit itself to the contents of the pleadings, including any attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *In re Katrina*

4

*Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, conclusory allegations and unwarranted deductions of fact are not accepted as true, *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974)); *Collins v. Morgan Stanley*, 224 F.3d at 498. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation."; *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 127 U.S. at 570. The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). "While a complaint . . . does not need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations, quotation marks, and brackets omitted;

emphasis added). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Bell Atlantic v. Twombly*, 127 U.S. at 570.

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic v. Twombly*, 127 U.S. at 556). See also *In Re Southern Scrap*, 541 F.3d 584, 587 (5th Cir. 2008). With these precepts in mind, the Court considers Plaintiff's Amended Complaint, including the exhibits attached thereto.[3]

---

[3]    The Court is permitted to consider exhibits attached to a complaint in ruling upon a Rule 12(b)(6) motion to dismiss. *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 375 (5th Cir. 2004). The Court has not, however, considered the police report attached as an exhibit to Defendants' Motion to Dismiss at Rec. Doc. 25-2. Police reports are not public record (*Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 322 (2009)), and Plaintiff's Complaint does not reference or otherwise incorporate the report.

## II.   __Whether Plaintiff's Claims Have Prescribed.__

Defendants first contend that Plaintiff's claims are prescribed. 42 U.S.C. §1983 does not contain a statute of limitations. Therefore, federal law looks to the applicable state law statute of limitations. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Specifically, the court is to apply the state's statute of limitations applicable to personal injury actions. *Id.*, citing *Owens v. Okure,* 488 U.S. 235, 249–250 (1989), and *Wilson v. Garcia,* 471 U.S. 261, 279–280 (1985). In Louisiana, the prescriptive period for personal injury actions is one year. La. C.C. art. 3492. However, the accrual date for a §1983 cause of action is governed by federal law, rather than state law. *Wallace,* 549 U.S. at 388. This is a case involving the tort of false arrest and imprisonment.[4]

Defendants maintain that Plaintiff's claim for false imprisonment accrued in August 2017, one year after Plaintiff's arrest. (Rec. Doc. 25-1, at 11). Plaintiff concedes that his claims for false imprisonment "up to the filing of the bill of information on November 9, 2016" have prescribed. (Rec. Doc. 30, at 25). The Court disagrees with the parties' determination as to the accrual date of Plaintiff's claims for false imprisonment; although, it is ultimately a distinction without relevance,

---

[4]     As explained by the Court in *Wallace v. Keto,* the theories of false arrest and false imprisonment overlap. *Wallace*, 549 U.S. at 388. As did the Court in *Wallace*, this Court will refer to both torts together as "false imprisonment."

since Plaintiff's claims for false imprisonment are prescribed regardless of the accrual date.

In *Wallace v. Kato*, the United States Supreme Court established that the appropriate accrual date for claims of false imprisonment, "where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process," which in that case was the date on which the plaintiff "appeared before the examining magistrate and was bound over for trial." *Wallace*, 549 U.S. at 391; 397. Based on this, district courts interpreting *Wallace* have held that a plaintiff's §1983 claim for false imprisonment accrues at the time of release from imprisonment. See e.g. *Thomas v. Gryder*, No. CV 17-1595-EWD, 2018 WL 4183206, at *3 (M.D. La. Aug. 31, 2018), and cases cited therein at footnote 38. However, that conclusion should not be universally applied. Instead, the court must determine the appropriate time period of false imprisonment within the context of *Wallace*. In *Wallace*, the Supreme Court held that a claim for false imprisonment encompasses the time period between the time of warrantless arrest and the time legal process commences, such as by arraignment or appearance before a magistrate. *Wallace*, 549 U.S. at 389-90. After legal process commences, the claim becomes one for malicious prosecution. *Id.* at 390.

According to the minutes from the state court proceedings attached as Exhibit C to the Amended Complaint, Plaintiff was arraigned on December 8, 2016. (Rec.

Doc. 16-3). Thus, based on the calculation mandated by *Wallace*, Plaintiff's claim for false imprisonment accrued as of that date. As Plaintiff concedes, his federal law claims for false imprisonment, commenced by filing this suit on January 23, 2019, more than two years after his arraignment, are prescribed.

Unlike federal law claims for false imprisonment, state law claims for false imprisonment accrue on the date of arrest. *Eaglin v. Eunice Police Dep't*, 2017-1875 (La. 6/27/18). Hence, Plaintiff's state law claims for false arrest prescribed one year after his arrest, August 29, 2017. Although the accrual periods differ, these claims are likewise barred. Therefore, the Court recommends that Plaintiff's claims for false imprisonment (both state and federal) be dismissed.

Nonetheless, Plaintiff maintains that his claims for malicious prosecution are viable, commencing from the date the charges were dismissed. (Rec. Doc. 30, at 25). In *Castellano v. Fragazo*, the Fifth Circuit held that "'malicious prosecution' standing alone is no violation of the United States Constitution." 352 F.3d 939, 942 (5th Cir.2003) (en banc). Nonetheless the "initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection ...." *Id.* at 953–53. The prescriptive period for such claims for constitutional deprivations under §1983 commences at the time the criminal proceedings have terminated in the plaintiff's favor. *Winfrey v. Rogers*, 901 F.3d 483, 492 (5th Cir. 2018), *cert. denied sub nom. Johnson v. Winfrey*, No. 18-1024,

9

2019 WL 465382 (U.S. Apr. 15, 2019); *Price v. City of San Antonio, Tex.,* 431 F.3d 890, 894 (5th Cir.2005), citing *Eugene v. Alief Independent Sch. Dist.,* 65 F.3d 1299, 1306 (5th Cir.1995); *and Castellano,* 352 F.3d at 959. Similarly, Louisiana claims for malicious prosecution accrue on the date the charges are dismissed. *Murray v. Town of Mansura*, 2006-355 (La. App. 3 Cir. 9/27/06), 940 So. 2d 832, 838, *writ denied,* 2006-2949 (La. 2/16/07), 949 So. 2d 419, citing *Manuel v. Deshotels,* 160 La. 652, 107 So. 478 (1926); *and De Bouchel v. Koss Const. Co.,* 177 La. 841, 149 So. 496 (1933).

The Amended Complaint alleges that the prosecution moved to "nolle prosse" the matter and that charges were formally dismissed against Plaintiff on June 11, 2018. (Rec. Doc. 16, ¶30). Plaintiff attached as an exhibit the minutes from that date, which state:

> FELONY TRIALS set for today. The State moved to NOLLE PROSSE this matter. Court RECALLED any outstanding warrants in this matter without sanction.

> (Rec. Doc. 16-5[5]).

See also *Lemoine v. Wolfe*, 2014-1546 (La. 3/17/15), 168 So.3d 362, 367, wherein the Louisiana Supreme Court held that a *nolle prosequi* of criminal charges constitutes a bona fide termination of the criminal matter. The Court finds this is the date, June 11, 2018, on which the criminal proceedings terminated. Thus, Plaintiff's

---

[5]    Capitalization in original.

claims for constitutional deprivations under §1983 arising from the criminal prosecution and his claims for malicious prosecution under Louisiana law, which were commenced on January 23, 2019, were timely.

III.    **Whether Plaintiff has stated a claim under the Fifth Amendment.**

Defendants next seek to dismiss Plaintiff's Fifth Amendment claims, citing the Amended Complaint's Introduction, purporting to assert such claims. (See Rec. Doc. 16, at 1).

The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without "due process of law." *Dusenbery v. United States*, 534 U.S. 161, 167 (2002). The Fifth Amendment applies to federal actors; the Fourteenth Amendment applies to state actors. *Marceaux v. Lafayette City-Par. Consol. Gov't*, 921 F.Supp.2d 605, 631 (W.D. La. 2013). Plaintiff's Complaint is devoid of any factual allegations regarding any federal actor, and Plaintiff asserts no response to Defendants' motion to dismiss in this regard. Therefore, the Court recommends that Plaintiff's claims for Fifth Amendment violations (if any) be dismissed.

IV.    **Whether Plaintiff has stated a claim under the Fourteenth Amendment.**

Defendants next seek dismissal of Plaintiff's claims for alleged violations of his Fourteenth Amendment rights. The Fourteenth Amendment protects an

individual's substantive due process, procedural due process, and equal protection rights. The core concept underlying due process is protection from arbitrary government action. *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). Absent governmental action which is "conscience shocking," a Fourteenth Amendment claim cannot survive. *Id.* As such, the Supreme Court has held that police action "with no intent to harm suspects physically or to worsen their legal plight do[es] not give rise to liability under the Fourteenth Amendment, redress[a]ble by an action under §1983." *Id.* at 854.

Plaintiff submits that "the Defendants used the false statements of a convicted felon on which to predicate the prosecution of the Plaintiff." (Rec. Doc. 30, at 16). Specifically, Plaintiff maintains that "the officers lack[ed] any basis to believe DeAndres Mitchell, never before having used him as an informant and in view of his easily ascertained status as a convicted felon." (Rec. Doc. 16, ¶26). Plaintiff relies upon the Fifth Circuit's holding in *Castellano, supra,* wherein the court considered a case involving manufactured evidence and perjured testimony resulting in a wrongful conviction and agreed that such conduct constituted a violation of the plaintiff's due process rights.

This Court is unpersuaded by Plaintiff's analogy to *Castellano,* wherein a police officer who worked as a security officer in the plaintiff's restaurant conspired with the plaintiff's employee to frame the plaintiff for arson. Officer Burton's

12

reliance upon the excited utterance of Mitchell that Plaintiff had attempted to pull a gun on him does not in any way compare to the *Castellano* officer's apparently calculated, dishonest, and likely illegal, actions in that case. As noted by the Supreme Court in *County of Sacramento v. Lewis*, a police officer's actions in a time of imminent danger should not be considered in a vacuum:

> Like prison officials facing a riot, the police on an occasion calling for fast action have obligations that tend to tug against each other. Their duty is to restore and maintain lawful order, while not exacerbating disorder more than necessary to do their jobs. They are supposed to act decisively and to show restraint at the same moment, and their decisions have to be made "in haste, under pressure, and frequently without the luxury of a second chance." *Id.,* at 320, 106 S.Ct., at 1084; cf. *Graham v. Connor,* 490 U.S., at 397, 109 S.Ct., at 1872 ("[P]olice officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving").

*County of Sacramento*, 523 U.S. at 853.

Plaintiff's allegations, even if assumed true, do not suggest that the officers' conduct in effectuating the arrest was "conscience shocking." The Court finds it would be unreasonable to expect police officers to, before taking any other action, determine whether an individual, who has just yelled that he is in imminent danger of being shot, is a confidential informant (and thus, as Plaintiff suggests, more worthy of belief) or a convicted felon (and thus, as Plaintiff suggests, more prone to

13

owning a gun later found).[6] The fact that Officer Burton did not, upon hearing Mitchell's statement, undertake an effort to make such determinations prior to taking further action does not rise to the level of "conscience shocking" required by the Fourteenth Amendment. Hence, the Court recommends that Plaintiff's Fourteenth Amendment claims be dismissed.

**V.    Plaintiff's Malicious Prosecution and Fourth Amendment Claims.**

In *Castellano v. Fragozo*, the Fifth Circuit held that "causing charges to be filed without probable cause will not without more violate the Constitution," such that "the assertion of malicious prosecution states no constitutional claim." *Castellano,* 352 F.3d at 953. However, claims pled as "malicious prosecution" do not automatically mandate dismissal. Rather, the court must consider whether the facts set forth a claim for constitutional violations pursuant to §1983, such as due process violations. See *Price v. City of San Antonio, Tex*., 431 F.3d 890, 891 (5th Cir. 2005); *Boyd v. Driver*, 495 F. App'x 518, 522 (5th Cir. 2012).

Applicable in the context of claims for unlawful pretrial detention, such as in the instant case, is the Fourth Amendment right to be free from unlawful seizure. In *Manual v. City of Joliet*, the Supreme Court explained:

> [P]retrial detention can violate the Fourth Amendment not only when it precedes, but also when it follows, the start of legal process in a

---

[6]    This is notwithstanding that any such determination would be irrelevant. Confidential informants and convicted felons are equally entitled to police protection from imminent danger of being shot.

14

criminal case. The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause. See *supra,* at 917. That can happen when the police hold someone without any reason before the formal onset of a criminal proceeding. But it also can occur when legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements. Then, too, a person is confined without constitutionally adequate justification. Legal process has gone forward, but it has done nothing to satisfy the Fourth Amendment's probable-cause requirement. And for that reason, it cannot extinguish the detainee's Fourth Amendment claim—or somehow, as the Seventh Circuit has held, convert that claim into one founded on the Due Process Clause. See 590 Fed.Appx., at 643–644. If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment.

*Manuel v. City of Joliet, Ill.,* 137 S. Ct. 911, 918–19, 197 L. Ed. 2d 312 (2017) (footnote omitted).

Thus, even though Plaintiff may not technically proceed upon a federal law theory of "malicious prosecution," this Court must nonetheless analyze whether he has stated a claim upon which relief can be granted under the Fourth Amendment. *Winfrey*, 901 F.3d at 491-92. In determining whether the plaintiff has stated a claim under the Fourth Amendment, the Court must determine whether the Complaint alleges facts that a form of legal process resulted in pretrial detention without probable cause.

Plaintiff alleges that he was arrested and detained from August 29, 2016 through January 26, 2017, and charged with the crime of possessing a firearm as a convicted felon. Plaintiff alleges that on January 26, 2017, the state court determined that the officers did not have probable cause for the arrest. (Rec. Doc. 16, ¶22-32;

15

Rec. Doc. 16-4, at 13). These allegations, considered in the light most favorable for Plaintiff, state a valid Fourth Amendment claim for Plaintiff's pre-trial detention without probable cause.

## VI.    Whether Officers Burton and Hardy are Qualifiedly Immune.

Even though the Court finds that Plaintiff has stated a §1983 claim under the Fourth Amendment, Plaintiff's claims are subject to dismissal on the grounds of qualified immunity, as invoked by Defendants.

> When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia,* 305 F.3d 314, 323 (5th Cir.2002) (en banc). To discharge this burden, "a plaintiff must satisfy a two-prong test." *Atteberry,* 430 F.3d at 253. "First, he must claim that the defendants committed a constitutional violation under current law." *Id.* (citing, e.g., *Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). "Second, he must claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Id.* "To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " *Kinney v. Weaver,* 367 F.3d 337, 349–50 (5th Cir.2004) (en banc) (alteration in original) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). "The central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.' " *Id.* at 350 (quoting *Hope v. Pelzer,* 536 U.S. 730, 740, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)).
>
> *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194–95 (5th Cir. 2009).

16

"Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Id*. at 207, quoting *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000). (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). "Thus, plaintiffs must allege facts permitting an inference that defendants lacked arguable (that is, reasonable but mistaken) probable cause for the arrests." *Id*., citing *Babb v. Dorman*, 33 F.3d 472, 478 (5th Cir.1994); and *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir.2005). "[E]vidence that the arrestee was innocent of the crime is not necessarily dispositive of whether the officer had probable cause to conduct the arrest because 'probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *Deville v. Marcantel*, 567 F.3d 156, 165 (5th Cir. 2009), citing *Illinois v. Gates*, 462 U.S. 213, 244 n. 13 (1983). Further, "[a]n officer's conduct is objectively reasonable 'if a reasonable person in [his] position could have believed he had probable cause to arrest.'" *Id*. at 166 quoting *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir.2000). Under Louisiana law, an officer is authorized to arrest an individual without a warrant when he has reasonable cause to believe the person has committed an offense. La. C.Cr. P. art. 213(A)(3).

With these precepts in mind, the Court considers Plaintiff's allegations in this case. Plaintiff alleges that Officer Burton "conducted a traffic stop purportedly for failure to come to a complete stop at the intersection." (Rec. Doc. 16, ¶22). Plaintiff

does not challenge the propriety of the initial traffic stop. Plaintiff then alleges that, upon Plaintiff bringing the vehicle to a stop, his passenger, Mitchell, "jumped out of the vehicle and told defendant Burton that [Plaintiff] had '…a gun and he tried to put in [sic] on me', or words to that effect." (Rec. Doc. 16, ¶23. See also hearing transcript attached as Exhibit D to Amended Complaint at Rec. Doc. 16-4, at 2-3). Upon hearing those words, Officer Burton had reasonable cause to believe that an assault or battery was about to occur. Standards of reasonableness did not require Officer Burton to first ascertain any facts confirming Mitchell's credibility before taking further action to ensure the safety of those in the area.

Plaintiff attempts to classify Mitchell's statement as a "tip," requiring further corroboration, citing *Illinois v. Gates*, 462 U.S. 213, 241-46 (1983). However, Mitchell's statement, uttered nearly contemporaneously with the initial traffic stop, is more akin to an excited utterance worthy of immediate action than to a tip, delivered at a point in time and place removed from the scene, requiring further investigation.

At the preliminary examination hearing on January 26, 2017, Officer Burton testified that, following Mitchell's statement, Plaintiff got out of the vehicle after approximately three commands and went to the ground. After calling for backup, Officer Burton searched around the vehicle and found a gun on the passenger side approximately three feet away. Both Plaintiff and Mitchell claimed that it was the

other's gun. Officer Burton was unable to determine who could have tossed the gun from the car. (Rec. Doc. 16-4, at 4-5). Officer Burton arrested Plaintiff, because of Mitchell's statement and the fact that he had found the gun, which he learned had been reported as stolen. (Rec. Doc. 16-4, at 8).

"Officers may perform searches incident to constitutionally permissible arrests in order to ensure their safety and safeguard evidence." *Retro Club, LLC*, 568 at 210, citing *Virginia v. Moore,* 553 U.S. 164, 176 (2008); *United States v. Robinson,* 414 U.S. 218, 235 (1973). "The search is limited to the area within the arrestee's immediate control and restricted to securing any weapons that the arrestee might use or evidence the arrestee might conceal." *Id*., citing *Chimel v. California,* 395 U.S. 752, 763 (1969). Thus, once Officer Burton lawfully detained Plaintiff, he was constitutionally permitted to search the immediate area for weapons. Upon locating the gun and determining that it was stolen, he had probable cause to arrest Plaintiff.

The fact that Plaintiff was not later charged with assault (following Mitchell's statement indicating assault) is of no moment. See *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). Neither does it matter that Plaintiff was not actually the one guilty of the gun offenses. See *Maryland v. Pringle*, a factually analogous case wherein the Supreme Court found that the arresting officer had probable cause to arrest the defendant, upon finding cocaine in the vehicle, where all three occupants, including

the defendant, denied ownership of the drugs. *Maryland v. Pringle*, 540 U.S. 366, 366, (2003). "[I]t is an entirely reasonable inference from the facts here that any or all of the car's occupants had knowledge of, and exercised dominion and control over, the cocaine, [such that] a reasonable officer could conclude that there was probable cause to believe [the defendant] committed the crime of possession of cocaine, either solely or jointly." *Id*. Likewise, in this case, it was entirely reasonable for Officer Burton to conclude that Plaintiff had, solely or jointly, committed the crime of possessing a stolen gun.

Plaintiff's position rests upon the notion that, since the state court found probable cause lacking, the officers' arrest was unreasonable. The Court does not hereby attempt to second-guess the findings of the state court. Rather, the Court in this instance is called upon to determine the reasonableness of the defendant officers' actions at the time of the arrest. See *Mendenhall*, 213 F.3d at 231. Finding that the officers' actions were reasonable, in light of Mitchell's initial statement and the subsequent discovery of the stolen gun, the Court finds that the officers are entitled to qualified immunity. Accordingly, the Court recommends that Plaintiff's claims for "malicious prosecution," and any Fourth Amendment claims arising from his arrest and subsequent incarceration be dismissed.

**VII.**    <u>**Plaintiff's state law claims.**</u>

As discussed above, the Court recommends that Plaintiff's state law claims for false arrest and imprisonment be dismissed as prescribed. With regard to Plaintiff's state law malicious prosecution claims, 28 U.S.C. §1367(c)(3) provides that the district may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. "When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims. However, the dismissal of the pendent claims should expressly be *without* prejudice so that the plaintiff may refile his claims in the appropriate state court." *Bass v. Parkwood Hosp.,* 180 F.3d 234, 246 (5th Cir.1999). Accordingly, the Court recommends that Plaintiff's sole remaining claim for malicious prosecution under state law be dismissed without prejudice.

<u>**CONCLUSION**</u>

For the reasons discussed herein, it is recommended that Defendants' Motion to Dismiss (Rec. Doc. 18) be DENIED AS MOOT, and that Defendants' Motion to Dismiss Regarding Plaintiff's First Amended Complaint (Rec. Doc. 25) be GRANTED IN PART and DENIED IN PART. The Court recommends that Plaintiff's §1983 claims for false arrest/imprisonment, all Fourth, Fifth, Fourteenth, *Monell*, and federal law claims for malicious prosecution be dismissed with

prejudice. The Court recommends that Plaintiff's state law claims for malicious prosecution be dismissed without prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 4th day of June, 2019.

_____
PATRICK J. HANNA

22